**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**CHAMBERS OF**
**STEPHANIE A. GALLAGHER**
**UNITED STATES DISTRICT JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**(410) 962-7780**

August 19, 2026

LETTER TO ALL COUNSEL OF RECORD

Re: *Eric C. v. Frank Bisignano, Commissioner, Social Security Administration*
Civil No. 25-01162-SAG

Dear Counsel:

On April 8, 2025, Plaintiff Eric C. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. I have considered the record in this case and the parties' briefs. ECF Nos. 11, 14, 19, 21. I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case for further proceedings. This letter explains why.

## I. PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on June 20, 2022, alleging a disability onset of September 1, 2019. Tr. 208-214. Plaintiff's claim was denied initially on March 22, 2021 and on reconsideration on September 2, 2021. Tr. 54-86. On February 3, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 28-53. Following the hearing, on February 14, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 301 et seq., during the relevant time frame. Tr. 12-23. The Appeals Council declined review on October 11, 2022. Tr. 1-6. Plaintiff filed a civil action and this Court remanded the case to the SSA upon consent motion of the Commissioner. *Crawford v. Commissioner of Social Security*, No. BAH-22-3002, ECF No. 16 (D. Md. July 12, 2023). The Appeals Council remanded the case to the ALJ on October 13, 2023. Tr. 563. An ALJ held another hearing on March 20, 2024, Tr. 525-556, and issued an unfavorable decision on May 7, 2024. Tr. 488-514. Plaintiff filed a request for review on May 7, 2024. Tr. 623-625, and the Appeals Council on February 3, 2025 declined to assume jurisdiction. Tr. 477-481. The ALJ's decision therefore constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a). Plaintiff filed an action for judicial review on April 8, 2025. ECF No. 1.

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since September 1, 2019, the alleged onset date." Tr. 493. At step two, the ALJ found that Plaintiff suffered from the severe impairments of Lyme's disease with vertigo, mastoiditis, attention deficit hyperactivity disorder (ADHD), and anxiety. Tr. 494. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 494. The ALJ also determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except he is able to stand/walk up to 4 hours in an 8-hour workday. He is able to sit up to 6 hours in an 8-hour workday. He is frequently able to climb ramps or stairs, balance, stoop, kneel, crouch, or crawl, but can never climb ladders, ropes, or scaffolds. He would need to avoid work at unprotected heights or around dangerous moving machinery (i.e., forklifts). He would need to avoid work requiring commercial driving or operation of moving machinery. He is able to understand and carry out simple instructions and routine, repetitive tasks. He is able to apply common sense understanding to carry out detailed, but uninvolved, instructions. He should avoid work requiring a high-quota production-rate pace (i.e., rapid assembly-line work where coworkers are side-by-side and the work of one affects the work of the others). He is able to perform work activities for up to two hours at a time but would then become distracted, causing him to be off task. However, time off task can be accommodated with normal breaks. He is occasionally able to change activities or work settings during the workday without it being disruptive. He is occasionally able to deal with changes in a routine work setting.

Tr. 497-498. The ALJ determined that Plaintiff was unable to perform any past relevant work but could perform jobs that existed in significant numbers in the national economy, such as final inspector, inspector, and racker. Tr. 507. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 507.

## III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The

findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla but may be somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV. ANALYSIS

On appeal, Plaintiff argues that the ALJ erred in evaluating the opinions of physician Dr. Harpal Mangat ("Dr. Mangat") and consultative examiner Evan Taxin, PA-C, ("Taxin") because the ALJ failed to adequately address the supportability and consistency factors of 20 C.F.R. § 404.1520c. Specifically, Plaintiff contends that Dr. Mangat supported his restrictive opinion with Plaintiff's symptoms and repeated abnormal examination findings, while the ALJ improperly characterized his treatment as conservative and the Plaintiff's condition as improving. Plaintiff also argues that the ALJ failed to examine Taxin's findings, which documented dizziness, poor balance, spatial-awareness problems, and functional difficulty. Instead, the ALJ attributed the dizziness to medication and improperly substituted his own lay judgment.

Separately, Plaintiff argues that the ALJ improperly discounted his subjective complaints based on his ability to live alone and remain "independent" without explaining how those activities translated into an ability to sustain full-time work or acknowledging Plaintiff's testimony that he slept extensively, struggled with stairs and chores, rarely bathed, relied on microwave meals and grocery delivery, and planned to move in with his brother for assistance. ECF No. 14 at 13-23.

The Commissioner responds that the ALJ properly evaluated both medical opinions under 20 C.F.R. § 404.1520c and that substantial evidence supports the RFC. As to Taxin, the Commissioner emphasizes that the ALJ considered both supportability and consistency, noting that Taxin's examination was otherwise largely normal, his severe restrictions were inconsistent with the overall record, and Plaintiff neither used nor presented with an assistive device. As to Dr. Mangat, the Commissioner argues that his extreme limitations lacked narrative support, were inconsistent with his treatment records and the broader evidence, and arose largely from telemedicine visits containing repeated historical findings. The Commissioner further contends that the ALJ appropriately evaluated Plaintiff's subjective complaints against the entire record, including improvement after antibiotics ended, minimal subsequent treatment, largely normal vision and mental-health findings, Plaintiff's ability to live alone and manage daily activities, and the absence of emergency treatment or an assistive device. ECF No. 19 at 7-10, 11-15.

In reply, Plaintiff argues that the Commissioner cannot cure the ALJ's deficient analysis by asking the Court to read the decision as a whole or by supplying post hoc rationalizations. Plaintiff further argues that Dr. Mangat expressly explained his opinion and his records contained numerous positive examination findings. Additionally, Plaintiff contends that the ALJ failed to

address Taxin's explanation and clinical evidence of continuing dizziness. Plaintiff also maintains that the Commissioner largely failed to respond to their arguments—namely, that the ALJ never explained how living alone or being "independent" demonstrated an ability to sustain work and failed to account for the significant limitations accompanying those activities. ECF No. 21 at 1-4.

This opinion focuses on Plaintiff's first argument, that the ALJ erred in evaluating the medical opinion of Dr. Mangat. When evaluating medical opinions in claims filed on or after March 27, 2017[1], an ALJ must, as the Fourth Circuit has explained:

> "evaluate the persuasiveness" of that evidence by applying a five-factor test, 20 C.F.R. § 404.1520c(a); *see also id.* § 404.1520c(b)(2), -(c). The factors are: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. *Id.* § 404.1520c(c)(1)-(5).
>
> Although the Social Security Administration must ultimately "stat[e] the ... reason or reasons upon which" its final decision "is based," 42 U.S.C. § 405(b)(1), an ALJ need not explain in detail how he "evaluate[d] the persuasiveness," 20 C.F.R. § 404.1520c(a), of each piece of evidence in the record. The ALJ only needs to say, for each "medical source" in the record, how each of the first two factors applies—that is, whether that source's conclusions are supportable by medical evidence and consistent with the rest of the record. *Id.* § 404.1520c(b)(1), -(2). An ALJ must consider all five factors, but need not discuss any save the first two unless those other factors are dispositive. *Id.* § 404.1520c(b)(3); *see* 42 U.S.C. § 405(b)(1).

*Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 604-05 (4th Cir. 2025).

The relevant regulations define these first two factors as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

[1] *See Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017).

"Supportability is the degree to which a provider supports [his or her] opinion with relevant, objective medical evidence and explanation, and consistency is the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record." *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)–(2)).

This Court has noted that supportability must be considered independently from consistency. *See Duane H. v. Kijakazi*, No. JMC-20-3673, 2021 WL 8314949, at *3 (D. Md. Dec. 29, 2021) (recognizing that to consider supportability "in conjunction with" consistency "would conflate the nuances of those factors."). The consistency factor is an outward facing inquiry, looking at whether the medical opinion is consistent with other evidence in the record. *Rosa M. v. Kijakazi*, No. 9:22-CV-04494-BHH-MHC, 2023 WL 9101308, at *7 (D. S. C. Dec. 8, 2023). This Court has made clear that an analysis of the consistency of an opinion with other opinions from the same provider and the rest of the record is not sufficient to constitute a supportability analysis. *See Carlos F. v. Kijakazi*, No. BAH-22-2049, 2023 WL 3293086, at *4–5 (D. Md. May 5, 2023) (finding that analysis of inconsistency between two opinions of one medical source was insufficient to assess supportability). The ALJ must assess the relevance of "the objective medical evidence and supporting explanations presented by a medical source" to the ultimate finding advanced by that medical expert. 20 C.F.R. § 404.1520c(c)(1).

The ALJ provided the following analysis of Dr. Mangat's opinion:

> The January 2022 physical medical source statement from the claimant's primary care physician, Harpal Mangat, M.D. is not persuasive (Exhibit 9F). The significant findings are not supported with explanatory narrative, nor are they supported by this provider's treatment records. Further, this opinion is inconsistent with the record. For example, there is nothing in the treatment records showing the claimant would be limited to walking, standing, and sitting for a total of an hour each in an eight-hour workday. The claimant has had relatively conservative treatment for his symptoms and Dr. Mangat's treatment notes indicate the claimant's Lyme's Disease related symptoms improved over time with treatment (Exhibit 7F). Additionally, the undersigned notes that after September 2020 he saw the claimant only once in person prior to rendering his opinion. All the other visits were conducted via telehealth. Despite the changing nature of the visits, he simply copied the claimant's examination findings forward from visit to visit. The file, as a whole, is not consistent with the extreme limitations indicated, as the majority of records include no discussion of symptoms which would support the limitations/restrictions indicated.

Tr. 505.

The ALJ adequately addressed the § 404.1520c(c)(1) supportability factor, noting that Dr. Mangat's significant findings in the Medical Source Statement were not supported by explanatory narrative, that Dr. Mangat's own treatment records did not contain any evidence for the walking,

sitting, and standing restrictions in his opinion, and that Dr. Mangat's records reflected relatively conservative treatment and improvement of symptoms over time. Tr. 505. Plaintiff points to various passages in the treatment records which he argues are inconsistent with these conclusions. ECF No. 14 at 15-19. But "[o]ften, as here, the medical sources arguably point in different directions. Because the ALJ is '[t]he trier of fact,' 'the duty to resolve' this 'conflicting medical evidence' lies with the ALJ. When the ALJ does that by applying the correct factors, we won't Monday-morning-quarterback the decision unless it is exceptionally clear that the ALJ made a mistake." *Drumgold*, 144 F.4th at 605 (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

However, the ALJ's § 404.1520c(c)(2) consistency analysis is entirely conclusory, stating only that "[t]he file, as a whole, is not consistent with the extreme limitations indicated, as the majority of records include no discussion of symptoms which would support the limitations/restrictions indicated." Tr. 505. The ALJ does not identify which evidence he considers to be inconsistent with Dr. Mangat's assessed limitations, nor which records' silence as to particular symptoms he finds significant, nor which minority of records apparently do discuss such symptoms and why he discounts them.

As the Fourth Circuit has explained, a reviewing court must ask "whether the ALJ 'offered a sufficient rationale in crediting certain evidence and discrediting other evidence.' The reason for this requirement, as in other administrative-law contexts, is that appellate *re*view is possible only when someone has first articulated a *view*." *Drumgold,* 144 F.4th at 605 (quoting *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023)). In *Drumgold*, for example, the ALJ similarly concluded that a medical opinion as to the claimant's limitations was inconsistent with the totality of the remaining record, but then "followed this statement with a citation to conflicting evidence" including the claimant's disability application, hearing testimony, treatment records, and another source's report. *Id.* at 607. The court was therefore able to conclude that substantial evidence supported the ALJ's determination that the medical source's opinion was inconsistent with the totality of the record. *Id.* at 608.

Here, however, without identifying the evidence purportedly inconsistent with the opinion or explaining how that evidence conflicts with Dr. Mangat's findings, the ALJ's generalized reference to the record as a whole does not build a logical bridge between the evidence and the conclusion that Dr. Mangat's opinion is unpersuasive, and frustrates meaningful judicial review. On remand, the ALJ should explicitly assess the consistency of Dr. Mangat's opinion pursuant to 20 C.F.R. § 404.1520c(c)(2), identifying the evidence that supports the ALJ's conclusions as to this factor.

Because the case is being remanded on the grounds described above, I need not address the other arguments that appear in Plaintiff's brief. On remand, the ALJ is welcome to consider these arguments and make any required adjustments to the opinion. Additionally, in remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

**V. <u>CONCLUSION</u>**

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Stephanie A. Gallagher
United States District Judge